**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| AMY THOMAS-LAWSON,<br>BRENDA BOLEY,<br>MIGUEL PADILLA, and<br>WILLIAM GREEN,<br>*On Behalf of Themselves and All Others Similarly Situated*,<br><br>               Plaintiffs,<br><br>       v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC,<br>               Defendant. | Case No. ___1:19-cv-3567___<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.      Defendant Carrington Mortgage Services, LLC ("Carrington"), one of the largest servicers of residential mortgages in the country, routinely violates the Fair Debt Collection Practices Act ("FDCPA") and state debt collection law, and breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal processing fees when borrowers pay their monthly mortgage by phone or online ("Pay-to-Pay fees"). Carrington illegally charges homeowners $5.00 for each online payment, and either $10.00 or $20.00 for payments made over the phone ("Pay-to-Pay Transactions").

2.      The FDCPA prohibits Carrington from collecting any amount in addition to the principal obligation unless *such amount is explicitly stated in the agreement creating the debt or permitted by law.* 15 U.S.C. 1692f(1). Importantly, Pay-to-Pay fees are found nowhere in the Uniform Mortgages and are not permitted by state debt collection law.

3.      Carrington services mortgages throughout the United States and is supposed to be

compensated out of the interest paid on each borrower's monthly payment. Carrington may charge borrowers fees actually authorized by the Uniform Mortgage or amounts actually paid to third parties who perform services for Carrington's borrowers. But Carrington cannot mark-up the amounts it pays third parties to provide borrowers' services and impose unauthorized charges to create a profit center for itself. Here, Carrington charged borrowers for online Pay-to-Pay fees through Speedpay, an automated online and telephone payment processing system created and maintained by Western Union. For performing this work, Carrington pays Western Union about $0.50 or less per online Pay-to-Pay Transaction and pockets the difference ($4.50) for itself as profit. Upon information and belief, Carrington also charges more for telephone Pay-to-Pay Fees than it spends to process the telephone Pay-to-Pay Transactions, pocketing for itself the difference ($9.50 or $19.50 per phone transaction).

4.    Despite its uniform contractual obligations to charge only fees explicitly allowed under the mortgage and applicable law, and only those amounts actually disbursed, Carrington leverages its position of power over homeowners and demands exorbitant Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants and applicable law only allow Carrington to pass along the actual cost of fees incurred by it to the borrower – here only a few cents per transaction.

5.    Plaintiffs Amy Thomas-Lawson, Brenda Boley, Miguel Padilla, and William Green all paid these Pay-to-Pay fees, and they bring this class action lawsuit individually and on behalf of all similarly situated putative class members.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over Carrington because Carrington conducts business in Maryland and commits torts in Maryland, as described in this Complaint.

7.    Venue is proper because the cause of action accrued in this District.

8.    Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the defendant and at least one class member and the amount in controversy

exceeds $5,000,000, and because the Complaint states a federal question.

**PARTIES**

9.     Plaintiff Amy Thomas-Lawson has a mortgage loan serviced by Carrington on her home located in Baltimore County, Maryland. When Carrington acquired the servicing rights to Ms. Thomas-Lawson's mortgage loan, her loan had a past-due balance. Ms. Thomas-Lawson has made several payments online and incurred an illegal $5.00 fee each time, including on September 21, 2017, October 21, 2017, September 17, 2017, and February 8, 2019.

10.    Plaintiff William Green has a mortgage loan serviced by Carrington on his home located in Warrensburg, New York. When Carrington acquired the servicing rights to Mr. Green's mortgage loan, his payments were delinquent. Mr. Green has made payments online and incurred a $5.00 fee. Mr. Green has also made payments over the phone, and incurred fees of $10.00 or $20.00 fee. Most recently, Carrington charged Mr. Green a $20.00 fee for making a payment over the phone in November 2019.

11.    Plaintiff Brenda Boley has a mortgage loan serviced by Carrington on her home located in Frisco, Texas. When Carrington acquired the servicing rights to Ms. Boley's loan, the loan had a past-due balance. Ms. Boley has made several payments online and incurred an illegal $5.00 fee each time. She was most recently charged a Pay-to-Pay Fee in November 2019.

12.    Plaintiff Miguel Padilla has a mortgage loan serviced by Carrington on his home located in Indio, California. Mr. Padilla has made his mortgage payments online since September of 2018. Each time he does so, Carrington charges him a $5.00 fee.

13.    Defendant Carrington is a Delaware limited liability corporation with a principal office in Connecticut.

## APPLICABLE LAW

**Fair Debt Collection Practices Act ("FDCPA")**

14.    The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

15.    The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

16.    The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f.

17.    The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

18.    The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).

19.    The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6). A loan servicer like Carrington is subject to the FDCPA when it services mortgages that were in default at the time the servicer acquired the servicing rights, or when it treats the mortgages as if they were in default at the time it acquired the servicing rights.

20.    The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

21.    The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household

purposes." *Id.* § 1692a(5).

**Maryland Consumer Debt Collection Act ("MCDCA")**

22.    The Maryland Consumer Debt Collection Act offers broad protection to consumers from underhanded methods used by unscrupulous creditors and debt collectors. It applies more broadly than the FDCPA.

23.    The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L., § 14-201(b). It allows recovery against both creditors collecting debts in their own names, and those whose primary business is debt collection.

24.    A "consumer transaction" under the MCDCA is "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." Md. Code, Com. L., § 14-201(c).

25.    The MCDCA prohibits "collectors" from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8). Seeking to collect a debt that includes "an unauthorized type of charge" violates this provision of the MCDCA.

26.    The MCDCA also makes it illegal to violate the federal FDCPA. *Id.* § 14-202(11).

**Texas Finance Code**

27.    Chapter 392 of the Texas Finance Code protects Texas consumers from deceptive and predatory debt collection practices.

28.    The Texas Finance Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(2).

29.    A "debt collector" is a person who "directly or indirectly engages in debt collection," which is in turn defined as "an action, conduct, or practice in collecting . . . consumer debts that are

5

due or alleged to be due a creditor." Tex. Fin. Code §§ 392.001(5)-(6).

30.     The Texas Finance Code prohibits (1) collecting or attempting to collect a … charge, fee, or expense incidental to the obligation unless the … incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

31.     The Texas Finance Code also prohibits representing that a consumer debt "may be increased by the addition of … service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12).

**California Rosenthal Fair Debt Collection Practices Act**

32.     The Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") is a remedial statute that protects California residents from unfair debt collection tactics.

33.     The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

34.     The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e).

35.     The Rosenthal Act makes it illegal for any entity covered by it to violate the FDCPA. Cal. Civ. Code § 1788.17. By violating the FDCPA, Carrington violated the Rosenthal Act.

36.     The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal.

Civ. Code § 1788.14.

37.     The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

## FACTUAL ALLEGATIONS

38.     Carrington is a loan servicer that operates across the country. Its principal purpose is to collect debt, and it uses interstate commerce to collect debt.

39.     Each time a mortgage borrower whose loan is serviced by Carrington makes a loan payment online or over the phone, Carrington charges the borrower a Pay-to-Pay Fee: $5.00 for each online payment, $10.00 for payments made over the phone via an automated system, and $20.00 for payments made over the phone with a customer service representative.

40.     Carrington's online Pay-to-Pay Transactions, which incur a $5.00 fee, are processed by Western Union, through its Speedpay system. The usual cost that a loan servicer pays Western Union to process Pay-to-Pay Transactions payments is $0.50 or less for each transaction. Therefore, the actual cost for Carrington to process online Pay-to-Pay Transactions is well below the amounts charged to borrowers, and Carrington illegally pockets the difference as profit. The actual cost for Carrington to process telephone Pay-to-Pay Transactions is also likely $0.50 or less and is also well below the $20.00 or $10.00 fees it collects from its borrowers.

41.     The Uniform Mortgage does not authorize Carrington to charge Pay-to-Pay Fees. In fact, the Pay-to-Pay Fees violate multiple uniform provisions of borrowers' mortgages.

42.     For example, Plaintiffs Thomas-Lawson, Green, and Padilla like many borrowers, have FHA mortgages, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of FHA mortgages state that the lender may only assess fees authorized

by the Secretary of the U.S. Department of Housing and Urban Development ("HUD").

43.     HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

44.     The Handbook does not authorize Pay-to-Pay Fees. And, Carrington has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

45.     Plaintiff Boley, like many other borrowers, has a mortgage that incorporates model language from Fannie Mae. Such mortgages contain uniform covenants that generally state that the servicer may not charge fees that are expressly prohibited by the mortgage or by applicable law. These mortgages typically state that "applicable law" means controlling federal, state, and local statutes, regulations, ordinances, and administrative rules and orders, as well as final non-appealable judicial opinions. Carrington assesses fees that are prohibited by "applicable law" when it charges Pay-to-Pay Fees in violation of state and federal statutes.

46.     In short, the Uniform Mortgages do not authorize Carrington to charge Pay-to-Pay Fees, and Carrington violates its borrowers' Uniform Mortgages when it assesses such fees. Carrington collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under its clients' mortgage agreements, and that it therefore had no right to collect them.

**Ms. Thomas-Lawson**

47.     On or about October 23, 2000, Ms. Thomas-Lawson purchased a home in Baltimore County, Maryland through a loan from GMAC Mortgage Corporation, secured by a mortgage on the

property (the "Maryland Mortgage Agreement"). The Maryland Mortgage Agreement is attached as **Exhibit A**. Ms. Thomas-Lawson took out the mortgage loan secured by her property for personal, family, or household uses.

48.     Carrington acquired the servicing rights to the loan in 2016. Ms. Thomas-Lawson's loan had a past-due balance at the time Carrington acquired the servicing rights.

49.     Carrington's principal purpose is to collect debt, and it used interstate commerce to collect debt. Furthermore, Carrington acquired the loan in default. Thus, Carrington is a "debt collector" under the FDCPA. Carrington regularly collects debts which are owed and due another. Thus, Carrington is also a "collector" under the MCDCA.

50.     Ms. Thomas-Lawson made timely mortgage payments.

51.     Ms. Thomas-Lawson sometimes makes her mortgage payments online. When she makes a mortgage payment online, Carrington charges her a $5.00 fee. This fee is not authorized by the Maryland Mortgage Agreement.

52.     Ms. Thomas-Lawson has made several payments online and incurred an illegal $5.00 fee each time, including on September 21, 2017, October 21, 2017, September 17, 2017, and February 8, 2019.

53.     Carrington collected the Pay-to-Pay Fees even though it knew that such fees were not authorized under the Maryland Mortgage Agreement, and that it therefore had no right to collect them.

54.     Ms. Lawson has an FHA mortgage, which states that the mortgage "shall be governed by Federal law and the law of the jurisdiction in which the Property is located." *See* Exhibit A, ¶ 14.

55.     Carrington's collection of the Pay-to-Pay Fees violated the FDCPA ("Federal law") and MCDCA ("the law of the jurisdiction in which the Property is located") because the Maryland Mortgage Agreement does not expressly allow Carrington to charge Pay-to-Pay Fees. *See* 15 U.S.C. §

1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"); Md. Code, Com. L, § 14-202(8), (11).

56.     Like other FHA Mortgages, the Maryland Mortgage Agreement only permits Carrington to collect "fees and charges authorized by the Secretary." *See* Ex. A, ¶ 8.

57.     By assessing Pay-to-Pay Fees not "authorized by the Secretary," Carrington violated the uniform covenants of the Maryland Mortgage Agreement.

58.     Even if Carrington is allowed to collect a fee under the auspice that it is a "default related fee," Carrington's demand for payment of Pay-to-Pay Fees was a direct breach of Paragraph 7 of the Maryland Mortgage Agreement, which states that only "amounts *disbursed* by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." *See* Ex. A, ¶ 7 (emphasis added). Carrington collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

59.     The above paragraphs are contained in the Uniform Covenants section of the Maryland Mortgage Agreement. Carrington has thus breached its contracts on a class-wide basis.

60.     Prior to filing this Complaint, Ms. Thomas-Lawson made a written pre-suit demand upon Carrington.

61.     Carrington was given a reasonable opportunity to cure the breaches and violations of law complained of herein, but has failed to do so.

**Mr. Green**

62.     On or about February 2, 2009, Mr. Green purchased a home in Warrensburg, New York through a loan from MetLife Home Loans, secured by a mortgage on the property (the "New York Mortgage Agreement"). The New York Mortgage Agreement is attached as **Exhibit B.** Mr.

Green took out the mortgage loan secured by his property for personal, family, or household uses.

63.    Carrington acquired the servicing rights to the loan. Mr. Green's loan was in default at the time Carrington acquired the servicing rights.

64.    Carrington's principal purpose is to collect debt, and it used interstate commerce to collect debt. Carrington regularly collects debts which are owed and due another. Since Carrington acquired the loan in default, and because Carrington meets the two-part definition of a "debt collector" under the FDCPA, Carrington is a debt collector.

65.    Mr. Green sometimes makes his mortgage payments online or over the phone. When he makes a mortgage payment online, Carrington charges him a $5.00 fee. When he makes his payments over the phone, Carrington charges him a $10.00 or $20.00 fee. Most recently, Carrington charged Mr. Green a $20.00 fee for making a payment over the phone in November 2019. These Pay-to-Pay Fees are not authorized by the New York Mortgage Agreement.

66.    Carrington collected the Pay-to-Pay Fees even though it knew that such fees were not authorized under the New York Mortgage Agreement, and that it therefore had no right to collect them.

67.    Mr. Green has an FHA mortgage, which states that it "shall be governed by Federal law and the law of the jurisdiction in which the Property is located." *See* Exhibit B, ¶ 14. Carrington's collection of the Pay-to-Pay Fees violated the FDCPA ("Federal law") because the New York Mortgage Agreement does not expressly allow Carrington to charge Pay-to-Pay Fees. *See* 15 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

68.    Like other FHA mortgages, the New York Mortgage Agreement only permits Carrington to collect "fees and charges authorized by the Secretary," i.e., the Secretary of the U.S.

Department of Housing and Urban Development ("HUD"). *See* Ex. B, ¶ 8.

69.     By assessing Pay-to-Pay Fees not "authorized by the Secretary," Carrington violated the uniform covenants of the New York Mortgage Agreement.

70.     Even if Carrington is allowed to collect a fee under the auspice that it is a "default related fee," Carrington's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 7 of the New York Mortgage Agreement, which states that only "amounts *disbursed* by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." *See* Ex. B, ¶ 7 (emphasis added). Carrington collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

71.     The above paragraphs are contained in the Uniform Covenants section of the New York Mortgage Agreement. Carrington has thus breached its contracts on a class-wide basis.

72.     Prior to filing this Complaint, Mr. Green made a written pre-suit demand upon Carrington.

73.     Carrington was given a reasonable opportunity to cure the breaches and violations of law complained of herein, but has failed to do so.

**Ms. Boley**

74.     On or about November 20, 2007, Ms. Boley purchased a home in Frisco, Texas through a loan from Countrywide Home Loans, secured by a mortgage on the property (the "Texas Mortgage Agreement"). The Texas Mortgage Agreement is attached as **Exhibit C**. Ms. Boley took out the mortgage loan secured by her property for personal, family, or household uses.

75.     Carrington acquired the servicing rights to the loan in 2019. At the time Carrington acquired the servicing rights, Ms. Boley had a past-due balance.

76.     Carrington's principal purpose is to collect debt, and it used interstate commerce to collect debt. Carrington regularly collects debts which are owed and due another. Since Carrington

acquired the loan in default, and because Carrington meets the two-part definition of a "debt collector"
under the FDCPA, Carrington is a debt collector.

77.    Ms. Boley made timely mortgage payments.

78.    Ms. Boley sometimes makes her mortgage payments online. When she makes a
mortgage payment online, Carrington charges her a $5.00 fee. This fee is not authorized by the Texas
Mortgage Agreement.

79.    Ms. Boley has made several payments online and incurred an illegal $5.00 fee each time.
She was most recently charged a Pay-to-Pay Fee in November 2019.

80.    Carrington collected the Pay-to-Pay Fees even though it knew that such fees were not
authorized under the Texas Mortgage Agreement, and that it therefore had no right to collect them
under the FDCPA or Texas Finance Code.

81.    Carrington's collection of the Pay-to-Pay Fees violated the FDCPA and Texas Finance
Code §§ 392.303 and 392.304 because the Mortgage Agreement does not expressly allow Carrington
to charge Pay-to-Pay Fees. *See* 15 U.S.C. § 1692f (making it illegal to collect "any amount (including
any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is
expressly authorized by the agreement creating the debt or permitted by law"); Tex. Fin. Code §
392.303(a)(2); *id.* § 392.304(a)(12).

82.    The Texas Mortgage Agreement incorporates model language drafted by Fannie Mae.
Like other Fannie Mae mortgages, the Texas Mortgage Agreement states that the servicer "may not
charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." Ex. C ¶
14.

83.    "Applicable Law" is defined as "all controlling applicable federal, state and local
statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as

well as all applicable final, non-appealable judicial opinions." Ex. C at 2.

84.     By collecting fees in violation of Applicable Law, Carrington breached the uniform
covenants of the Texas Mortgage Agreement.

85.     Even if Carrington is allowed to collect a fee under the auspice that it is a default
related fee, under Paragraph 9 of the Texas Mortgage Agreement, Carrington's demand for payment
of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 of the Texas Mortgage
Agreement states that only "amounts *disbursed* by Lender under this Section 9 shall become an
additional debt of Borrower secured by this Security Instrument." *See* Ex. C ¶ 9 (emphasis added).
Carrington collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

86.     The above paragraphs are contained in the Uniform Covenants section of the Texas
Mortgage Agreement. Carrington has thus breached its contracts on a class-wide basis.

87.     Prior to filing this Complaint, Ms. Boley made a written pre-suit demand upon
Carrington.

88.     Carrington was given a reasonable opportunity to cure the breaches and violations of
law complained of herein, but has failed to do so.

**Mr. Padilla**

89.     On or about December 10, 2009 Mr. Padilla purchased a home in Indio, California,
through a loan from Metropolitan Home Mortgage, Inc (the "California Mortgage Agreement"). The
California Mortgage Agreement is attached as **Exhibit D.** Mr. Padilla took out the mortgage secured
by his property for personal, family, or household uses.

90.     Carrington acquired the servicing rights to the loan in September of 2018. Mr. Padilla
made timely mortgage payments.

91.     Mr. Padilla has made his mortgage payments online since September of 2018. Each
time he does so, Carrington charges him a $5.00 fee. This $5.00 Pay-to-Pay Fee is not authorized by

14

the California Mortgage Agreement.

92.    Mr. Padilla has an FHA mortgage which, like other FHA mortgages, only permits Carrington to collect "fees and charges authorized by the Secretary," i.e., the Secretary of the U.S. Department. Ex. D ¶ 8.

93.    By assessing Pay-to-Pay Fees not "authorized by the Secretary," Carrington violated the uniform covenants of the California Mortgage Agreement.

94.    Even if Carrington is allowed to collect a fee under the auspice that it is a "default related fee," Carrington's demand for payment of Pay-to-Pay Fees were a direct breach of Paragraph 7 of the California Mortgage Agreement, which states that only "amounts *disbursed* by the lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." *See* Ex. D ¶ 7. Carrington collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

95.    The above paragraphs are contained in the Uniform Covenants section of the California Mortgage Agreement. Carrington has thus breached its contracts on a class-wide basis.

96.    The California Mortgage Agreement also states that it is "governed by federal law and the law of the jurisdiction in which the property is located," i.e., California. Ex. D ¶ 14.

97.    Charging Pay-to-Pay Fees not authorized by the California Mortgage Agreement violated the Rosenthal Act. *See* Cal. Civ. Code § 1788.13(e).

98.    Carrington collected the Pay-to-Pay Fees even though it knew that such fees were not authorized under the California Mortgage Agreement, and that it therefore had no right to collect them under the Rosenthal Act.

99.    Prior to filing this Complaint, Mr. Padilla made a written pre-suit demand upon Carrington.

100.    Carrington was given a reasonable opportunity to cure the breaches and violations of

law complained of herein, but has failed to do so.

## CLASS ACTION ALLEGATIONS

101.    Plaintiffs bring this action under Federal Rule of Civil Procedure 23 on behalf of the

following classes of persons (the "Classes"), subject to modification after discovery and case

development:

> **Nationwide FDCPA Class:** All persons who were borrowers on residential mortgage loans that were not owned by Carrington and to which Carrington's records show it acquired the servicing rights when such loans were 30 days or more delinquent on loan payment obligations, and paid a fee to Carrington for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.
>
> **Maryland Class:** All persons with a Maryland address who were borrowers on residential mortgage loans to which Carrington acquired servicing rights, and paid a fee to Carrington for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.
>
> **Texas Class:** All persons with a Texas address who were borrowers on residential mortgage loans to which Carrington acquired servicing rights, and paid a fee to Carrington for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.
>
> **California Class:** All persons with a California address who were borrowers on residential mortgage loans to which Carrington acquired servicing rights and paid a fee to Carrington for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.
>
> **New York Class:** All persons with a New York address who were borrowers on residential mortgage loans to which Carrington acquired servicing rights and paid a fee to Carrington for making a loan payment by telephone, IVR, or the internet, during the applicable statutes of limitations through the date a class is certified.

102.    Class members are identifiable through Defendant's records and payment databases.

103.    Excluded from the classes are the Defendant; any entities in which it has a controlling

interest; its agents and employees; and any Judge to whom this action is assigned and any member of

such Judge's staff and immediate family.

104.    Plaintiffs propose that they serve as class representatives.

105.    Plaintiffs and the Classes have all been harmed by the actions of Defendant.

106.    Numerosity is satisfied. There are likely thousands of class members. Individual joinder of these persons is impracticable.

107.    There are questions of law and fact common to Plaintiffs and to the Class, including, but not limited to:

      a.    Whether Carrington assessed Pay-to-Pay fees on Class members;

      b.    Whether Carrington breached its contracts with borrowers by charging Pay-to-Pay fees not authorized by their mortgage agreements;

      c.    Whether Carrington violated the FDCPA by charging Pay-to-Pay fees not due;

      d.    Whether Carrington violated the MCDCA by charging Pay-to-Pay fees not due;

      e.    Whether Carrington violated the MCPA;

      f.    Whether Carrington violated the Texas Finance Code;

      g.    Whether Carrington violated the Rosenthal Act;

      h.    Whether Carrington's cost to process Pay-to-Pay Transactions is less than the amount that it charged for Pay-to-Pay fees;

      i.    Whether Plaintiffs and the Classes were damaged by Carrington's conduct;

      j.    Whether Plaintiffs and the Classes are entitled to actual and/or statutory damages as a result of Carrington's actions;

      k.    Whether Plaintiffs and the Classes are entitled to restitution;

      l.    Whether Carrington should be enjoined from collecting Pay-to-Pay Fees; and

      m.    Whether Plaintiffs and the Classes are entitled to attorney's fees and costs.

108.    Plaintiffs' claims are typical of the claims of the Class members. Carrington charged them Pay-to-Pay Fees in the same manner as the rest of the Class members. Plaintiffs and the Class members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay Fees

17

or, at most, cap the amount of Pay-to-Pay Fees allowed to be charged at the actual amount disbursed by Carrington to process Pay-to-Pay Transactions.

109.    Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the class members and they will adequately and fairly protect the interests of the class members. Plaintiffs have taken actions before filing this amended complaint, by hiring skilled and experienced counsel, and by making pre-suit demands on behalf of class members to protect the interests of the class.

110.    Plaintiffs have hired counsel that is skilled and experienced in class actions and are adequate class counsel capable of protecting the interests of the class members.

111.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

112.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT I
### Violation of the Fair Debt Collection Practices Act
### 15 U.S.C. § 1692 *et seq.*
### On behalf of Plaintiffs Thomas-Lawson, Boley, and Green, and the Nationwide FDCPA Class

113.    Paragraphs 1 to 112 are hereby incorporated by reference.

114.    This action is maintainable as a nationwide class action pursuant to 15 U.S.C. § 1692k(a)(2)(b).

115.    The FDCPA makes it an illegal, unfair practice for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

18

116.    Because Carrington regularly collects debts owed others and because it acquired the loans of Plaintiffs and the Nationwide Class members while those loans were in default, it qualifies as a debt collector under the FDCPA.

117.    The Mortgage Agreements of Plaintiffs Thomas-Lawson, Boley, Green, and the Nationwide Class members do not expressly authorize Carrington to collect Pay-to-Pay fees. At most, the Mortgage Agreements permit Carrington to collect the actual amount disbursed to process the Pay-to-Pay transactions.

118.    Although the Mortgage Agreements do not expressly authorize collection of Pay-to-Pay Fees, Carrington collected such fees anyway.

119.    In so doing, Carrington violated 15 U.S.C. § 1692f(1).

120.    Carrington intentionally, frequently, and persistently collected Pay-to-Pay Fees from Plaintiffs Thomas-Lawson, Boley, Green, and the Nationwide FDCPA Class members.

121.    Plaintiffs Thomas-Lawson, Boley, and Green, and the Nationwide FDCPA Class Members, were harmed as a result of Carrington's conduct.

122.    As a result of each and every violation of the FDCPA, Plaintiffs Thomas-Lawson, Boley, Green, and the Nationwide Class members are entitled to actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages under 15 U.S.C. § 1692k(a)(2)(A) to the full extent provided by law; and reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3) from Carrington.

### COUNT II
**Breach of Contract**
**On Behalf of Plaintiff Thomas-Lawson and the Maryland Class,**
**Plaintiff Boley and the Texas Class,**
**Plaintiff Padilla and the California Class, and**
**Plaintiff Green and the New York Class**

123.    Paragraphs 1 to 112 are incorporated herein by reference.

124.    Plaintiffs and the Class Members entered into contracts with Carrington. Carrington breached its contracts with Plaintiffs and the Class Members when it charged Pay-to-Pay Fees not

19

agreed to in their mortgage agreements, specifically prohibited by their mortgage agreements, and in excess of the amounts actually disbursed by Carrington to pay for the cost of the Pay-to-Pay Transactions.

125. Ms. Thomas-Lawson purchased a home subject to the Maryland Mortgage Agreement. *See* Ex. A.

126. When Carrington became servicer of her mortgage, it became a party to the Maryland Mortgage Agreement. Thus, Carrington entered into the Maryland Mortgage Agreement with Ms. Thomas-Lawson whereby money was lent to Ms. Thomas-Lawson to purchase property in exchange for certain payment over time.

127. The Maryland Mortgage Agreement does not expressly authorize Carrington to assess Pay-to-Pay Fees.

128. Paragraph 8 of the Maryland Mortgage Agreement only permits Carrington to collect "fees and charges authorized by the Secretary," i.e., the Secretary of the U.S. Department of Housing and Urban Development ("HUD"). *See* Ex. A, ¶ 8.

129. HUD permits servicers of FHA-insured mortgages like Ms. Thomas-Lawson's to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C).

130. The Handbook does not specifically mention Pay-to-Pay Fees. Upon information and belief, Carrington has not sought authorization from the National Servicing Center to charge Pay-to-

Pay Fees.

131.    By assessing Pay-to-Pay Fees not "authorized by the Secretary," Carrington violated Paragraph 8 of the Maryland Mortgage Agreement.

132.    Paragraph 7 of the Maryland Mortgage Agreement states that only "amounts *disbursed* by the lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." *See* Ex. A, ¶ 7. Despite this express limitation, Carrington assessed Pay-to-Pay Fees not agreed to in the Maryland Mortgage Agreement and in excess of the amounts actually disbursed by Carrington to pay for the cost of the Pay-to-Pay Transactions.

133.    Ms. Boley purchased a home subject to the Texas Mortgage Agreement. *See* Ex. C. She made timely mortgage payments.

134.    When Carrington became servicer of her mortgage, it became a party to the Texas Mortgage Agreement. Thus, Carrington entered into the Texas Mortgage Agreement with Ms. Boley whereby money was lent to Ms. Boley to purchase property in exchange for certain payment over time.

135.    The Texas Mortgage Agreement does not expressly authorize Carrington to assess Pay-to-Pay Fees.

136.    Paragraph 14 of the Texas Mortgage Agreement states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." Ex. C ¶ 14.

137.    "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. C at 2.

138.    Carrington's collection of the Pay-to-Pay Fees violated the FDCPA and Texas Finance Code §§ 392.303 and 392.304 because the Mortgage Agreement does not expressly allow Carrington

to charge Pay-to-Pay Fees. *See* 15 U.S.C. § 1692f (making it illegal to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law"); Tex. Fin. Code § 392.303(a)(2); *id.* § 392.304(a)(12).

139.    By collecting fees in violation of Applicable Law, Carrington breached the Texas Mortgage Agreement.

140.    Even if Carrington is allowed to collect a fee under the auspice that it is a default related fee, under Paragraph 9 of the Texas Mortgage Agreement, Carrington's demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 of the Texas Mortgage Agreement states that only "amounts *disbursed* by the lender under this Section 9 shall become an additional debt of Borrower secured by this Security Instrument." *See* Ex. C ¶ 9. Carrington collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

141.    On or about December 10, 2009 Mr. Padilla purchased a home in Indio, California, secured by the California Mortgage Agreement. *See* Ex. D.

142.    When Carrington became servicer of his loan, it became a party to the California Mortgage Agreement. Thus, Carrington entered into the California Mortgage Agreement with Mr. Padilla whereby money was lent to Mr. Padilla to purchase property in exchange for certain payment over time.

143.    Mr. Padilla makes his mortgage payments online. Each time he does so, Carrington charges him a $5.00 fee. This $5.00 Pay-to-Pay Fee is not authorized by the California Mortgage Agreement.

144.    The California Mortgage Agreement does not specifically authorize Carrington to assess Pay-to-Pay Fees.

145.    Paragraph 8 of the California Mortgage Agreement only permits Carrington to collect

"fees and charges authorized by the Secretary," i.e., the Secretary of the U.S. Department of Housing and Urban Development ("HUD"). *See* Ex. D, ¶ 8.

146.    HUD permits servicers of FHA-insured mortgages like Mr. Padilla's to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C).

147.    The Handbook does not specifically mention Pay-to-Pay Fees. Upon information and belief, Carrington has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

148.    By assessing Pay-to-Pay Fees not "authorized by the Secretary," Carrington violated Paragraph 8 of the California Mortgage Agreement.

149.    Even if Carrington is allowed to collect a fee under the auspice that it is a "default related fee," Carrington's demand for payment of Pay-to-Pay Fees was a direct breach of Paragraph 7 of the California Mortgage Agreement, which states that only "amounts *disbursed* by the lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." *See* Ex. D ¶ 7. Carrington collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

150.    On or about February 2, 2009, Mr. Green purchased a home in Warrensburg, New York through a loan from MetLife Home Loans, secured by the New York Mortgage Agreement. *See*

Ex. B.

151.    When Carrington became servicer of Mr. Green's mortgage, it became a party to the New York Mortgage Agreement. Thus, Carrington entered into the New York Mortgage Agreement with Mr. Green whereby money was lent to Mr. Green to purchase property in exchange for certain payment over time.

152.    Paragraph 8 of the New York Mortgage Agreement only permits Carrington to collect "fees and charges authorized by the Secretary," i.e., the Secretary of the U.S. Department of Housing and Urban Development ("HUD"). *See* Ex. B, ¶ 8.

153.    HUD permits servicers of FHA-insured mortgages like Mr. Green's to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C).

154.    The Handbook does not specifically mention Pay-to-Pay Fees. Upon information and belief, Carrington has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

155.    By assessing Pay-to-Pay Fees not "authorized by the Secretary," Carrington violated Paragraph 8 of the New York Mortgage Agreement.

156.    Even if Carrington is allowed to collect a fee under the auspice that it is a "default related fee," Carrington's demand for payment of Pay-to-Pay Fees was a direct breach of Paragraph 7 of the New York Mortgage Agreement, which states that only "amounts *disbursed* by the lender under

this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." *See* Ex. B, ¶ 7. Carrington collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

157.    The above paragraphs that Carrington breached are contained in the Uniform Covenants sections of each of the mortgages. Carrington has thus breached its contracts on a class-wide basis.

158.    Plaintiffs and the Class Members were harmed by this breach.

**COUNT III**
**Violation of the MCDCA**
**On behalf of Plaintiff Thomas-Lawson and the Maryland Class**

159.    Paragraphs 1 to 112 are hereby incorporated by reference.

160.    The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L., § 14-201(b). The MCDCA applies to Carrington because it attempts to collect alleged debts arising out of consumer transactions.

161.    Plaintiff Thomas-Lawson and the Maryland Class Members engaged in consumer transactions when they took out mortgages in order to acquire real property for personal, family, or household uses. Ms. Thomas-Lawson took out the mortgage loan secured by her property and now serviced by Carrington for personal, family, or household uses. *See* Md. Code, Com. L., § 14-201(c).

162.    The MCDCA prohibits "collectors" such as Carrington from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8).

163.    Carrington knew that the Mortgage Agreements of Plaintiff Thomas-Lawson and the Maryland Class Members did not expressly authorize Carrington to collect Pay-to-Pay Fees, and at most permitted Carrington to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this knowledge, Carrington represented to Plaintiff Thomas-Lawson and the Maryland Class

Members that it had the right to collect Pay-to-Pay Fees, and collected them from Plaintiff Thomas-Lawson and the Maryland Class Members.

164.    The MCDCA also makes it illegal to violate the federal FDCPA. *Id.* § 14-202(11).The FDCPA makes it an illegal, unfair practice for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

165.    The Mortgage Agreements of Plaintiff Thomas-Lawson and the Nationwide Class members do not expressly authorize Carrington to collect Pay-to-Pay fees. At most, the Mortgage Agreements permit Carrington to collect the actual amount disbursed to process the Pay-to-Pay transactions. Although the Mortgage Agreements do not expressly authorize collection of Pay-to-Pay Fees, Carrington collected such fees anyway. In so doing, Carrington violated 15 U.S.C. § 1692f(1).

166.    By violating § 1692f(1), Carrington also violated the MCDCA.

167.    As a result of Carrington's violations of the MCDCA, Plaintiff Thomas-Lawson and the Maryland Class members were harmed.

## COUNT IV
### Violation of the MCPA
### On behalf of Plaintiff and the Maryland Class

168.    Paragraphs 1 to 112 are hereby incorporated by reference.

169.    The MCPA prohibits unfair or deceptive trade practices in the collection of consumer debts. Md. Code, Com. L., § 13-301; *id.* ¶ 13-303.

170.    Plaintiff Thomas-Lawson and the Maryland Class members are "consumers" within the meaning of the MCPA because they are purchasers of consumer realty and recipients of consumer credit. *See id.* § 13-101(c)(1).

171.    The mortgage loans taken out by Plaintiff Thomas-Lawson and the Maryland Class members are "consumer credit" under the MCPA because they are credit debts or obligations securing real property used primarily for personal, household, family, or agricultural purposes. *Id.* § 13-101(d).

172.    Carrington is a "merchant" because it directly or indirectly makes available to consumers consumer services, reality, and/or credit. *Id.* § 13-101(g). The MCPA expressly applies to mortgage servicers. *Id.* § 13-316.

173.    Violations of the MCDCA are per se violations of the MCPA. Md. Code, Com. L., § 13-301(14)(iii). By violating the MCDCA, Carrington also violated the MCPA.

174.    As a result of Carrington's violations of the MCPA, Plaintiff Thomas-Lawson and the Maryland Class members were harmed.

## COUNT V
### Violation of the Texas Finance Code
### On behalf of Plaintiff Boley and the Texas Class

175.    Paragraphs 1 to 112 are hereby incorporated by reference.

176.    Chapter 392 of the Texas Finance Code protects Texas consumers from deceptive and predatory debt collection practices.

177.    The Texas Finance Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(2).

178.    A "debt collector" is a person who "directly or indirectly engages in debt collection," which is in turn defined as "an action, conduct, or practice in collecting . . . consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code §§ 392.001(5)-(6).

179.    Plaintiff Boley and the Texas Class Members took out consumer debt when they took out mortgages in order to acquire real property for personal, family, or household uses. Ms. Boley

27

took out the mortgage loan secured by her property and now serviced by Carrington for personal, family, or household uses. *See* Tex. Fin. Code § 392.001(2).

180.    Carrington is a debt collector because it directly or indirectly engages in debt collection.

181.    The Texas Finance Code prohibits "debt collectors" such as Carrington from (1) "collecting or attempting to collect a … charge, fee, or expense incidental to the obligation unless the … incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a)(2).

182.    It also prohibits "debt collectors" such as Carrington from representing that a consumer debt "may be increased by the addition of … service fees, or other charges if a written contract or statute does not authorize the additional fees or charges." Tex. Fin. Code § 392.304(a)(12).

183.    The Mortgage Agreements of Plaintiff Boley and the Texas Class Members did not expressly authorize Carrington to collect Pay-to-Pay Fees, and at most permitted Carrington to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this, Carrington represented to Plaintiff Boley and the Texas Class Members that it had the right to collect Pay-to-Pay Fees, and collected them from Plaintiff Boley and the Texas Class Members.

184.    As a result of Carrington's violations of the Texas Finance Code, Plaintiff Boley and the Texas Class Members were harmed.

## COUNT VI
### Violation of the Rosenthal Act
### On behalf of Plaintiff Padilla and the California Class

185.    Paragraphs 1 to 112 are hereby incorporated by reference.

186.    The Rosenthal Act applies to Carrington because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

187.    Carrington knew that the Pay-to-Pay Fees were not expressly set out in the California Mortgage Agreement or the mortgage agreements of the other California Class Members, yet it collected them anyway.

188.    By charging Pay-to-Pay Fees, a portion of which it retains, Carrington acted in violation of the federal Fair Debt Collection Practices Act, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

189.    The mortgage agreements of Plaintiff Padilla and the California Class Members do not expressly authorize Carrington to collect Pay-to-Pay Fees. At most, the Mortgage Agreements permit Carrington to collect the actual amount disbursed to process the Pay-to-Pay Transactions.

190.    Although the mortgage agreements of Plaintiff Padilla and the California Class Members do not expressly authorize collection of Pay-to-Pay Fees, Carrington collected such fees anyway.

191.    In so doing, Carrington violated 15 U.S.C. § 1692f.

192.    The Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the federal FDCPA, Carrington violated the Rosenthal Act.

193.    The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

194.    By assessing Pay-to-Pay Fees, Carrington represented that the mortgage loan debts of Plaintiff Padilla and the California Class Members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

195. This conduct violated the Rosenthal Act.

196. The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

197. When Carrington collected Pay-to-Pay Fees from Plaintiff Padilla and the California Class Members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated the Rosenthal Act.

198. Carrington collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under its clients' mortgage agreements, and that it therefore had no right to collect them.

199. Plaintiff Padilla and the California Class Members were harmed when Carrington violated the Rosenthal Act through the above-described conduct.

200. As a result of each and every violation of the Rosenthal Act, Plaintiff and the California Class Members are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation, pursuant to Cal. Civ. Code §§ 1788.30(b), 1788.17, and 1788.32, to the full extent provided by law; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

### COUNT VII
**Violation of the "Unlawful" Prong of the California Unfair Competition Law
On behalf of Plaintiff Padilla and the California Class**

201. Paragraphs 1 to 112 are hereby incorporated by reference.

202. The California Unfair Competition Law "UCL" defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

203.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

204.    As described in detail above, Carrington's conduct violates the FDCPA and the Rosenthal Act. These violations are sufficient to support Plaintiff Padilla's claim under the unlawful prong of the UCL.

205.    As a result of the above conduct, Carrington has been unjustly enriched at the expense of Plaintiff Padilla and members of the California Class. Carrington has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

206.    Through its unlawful acts and practices, Carrington has improperly obtained money from Plaintiff Padilla and the California Class Members. As such, Plaintiff Padilla requests that the Court cause Carrington to restore the money to Plaintiff Padilla and the California Class and enjoin Carrington from continuing to violate the UCL in the future. Plaintiff Padilla's mortgage continues to be serviced by Carrington, and he intends to make mortgage payments over the phone in the future. Absent an injunction, Plaintiff Padilla and the California Class Members may be irreparably harmed and/or denied an effective and complete remedy.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court:

1.    Certify the proposed Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.    Award damages, including compensatory and exemplary damages, to Plaintiffs and the Classes in an amount to be determined at trial;

3.    Award statutory damages and/or penalties to Plaintiffs and the proposed Classes as permitted by law;

4.      Enter an order enjoining Carrington from continuing to collect Pay-to-Pay Fees;

5.      Award Plaintiffs and the Class members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

6.      Award pre- and post-judgment interest to the extent provided by law; and

7.      Award such further relief as the Court deems appropriate.

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.**

Dated: December 16, 2019                    Respectfully Submitted,

/s/ Hassan A. Zavareei
Hassan A. Zavareei
Katherine M. Aizpuru
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (Phone)
202-973-0950 (Facsimile)
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Cary Joshi
James L. Kauffman (*to be admitted pro hac bice*)
Victor Woods (*to be admitted pro hac bice*)
BAILEY GLASSER LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
(202) 463-2101 (Phone)
(202) 463-2103 (Facsimile)
cjoshi@baileyglasser.com
jkauffman@baileyglasser.com
vwoods@baileyglasser.com

*Counsel for Plaintiff and the Putative Class*