JS-6
O

# United States District Court
# Central District of California

| | |
|---|---|
| AMY THOMAS-LAWSON, BRENDA BOLEY, MIGUEL PADILLA, and WILLIAM GREEN, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC,<br><br>Defendant. | Case No. 2:20-cv-07301-ODW (Ex)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO APPOINT INTERIM CLASS COUNSEL [71], DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION [75], AND GRANTING DEFENDANT'S MOTION TO DISMISS [76]** |

## I. INTRODUCTION

Plaintiffs Amy Thomas-Lawson, Brenda Boley, Miguel Padilla, and William Green filed this action on behalf of themselves and several putative classes in the U.S. District Court for the Northern District of Maryland against Defendant Carrington Mortgage Services, LLC. (Compl., ECF No. 1.) Upon a stipulation by the parties, the Maryland court transferred the case to this Court. (Transfer Order, ECF No. 41.)

Now, three motions are pending. ***First***, Plaintiffs move for an order appointing their counsel as interim class counsel under Federal Rule of Civil Procedure ("Rule") 23(g)(3) for the putative classes set forth in the Complaint. (Mot. Int. Class Counsel, ECF No. 71-1.) The matter is fully briefed. (*See id.*; Opp'n Int. Class Counsel, ECF No. 81; Reply Int. Class Counsel, ECF No. 82.) ***Second***, Defendants move to compel arbitration. (Mot. Comp. Arb., ECF No. 75-1.) That matter is also fully briefed. (*See id.*; Opp'n Comp. Arb., ECF No. 86; Reply Comp. Arb., ECF No. 87.) ***Third***, Defendants alternatively move to dismiss the Complaint under Rule 12(b)(6). (Mot. Dismiss, ECF No. 76-1.) That matter is fully briefed as well. (*See id.*; Opp'n Dismiss, ECF No. 85; Reply Dismiss, ECF No. 88.)

For the reasons that follow, the Motion to Compel Arbitration is **DENIED**, the Motion to Dismiss is **GRANTED with prejudice**, and the Motion to Appoint Interim Class Counsel is **DENIED** as moot.[1]

## II. BACKGROUND

Thomas-Lawson, Boley, Padilla, and Green own homes located in Maryland, Texas, California, and New York, respectively, each of which is subject to a mortgage serviced by Carrington. (Compl. ¶¶ 9–12.) Carrington accepts mortgage payments through its online website or over the phone, among other methods of payment. (*Id.* ¶ 39.) Carrington charges a $5 convenience fee to pay online, and it charges a $10 or $20 convenience fee to pay via phone. (*Id.*) Plaintiffs bring this action against Carrington on behalf of themselves and five putative classes (nationwide, Maryland, Texas, California, and New York classes) to challenge the legality of these "pay-to-pay" fees. (*See id.* ¶ 101.)

Payments to Carrington that are made online or over the phone are processed through a third-party mortgage payment processing service called Speedpay. (*See id.*

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

¶ 3.) To use Speedpay, a payor must authorize the payment and agree to a number of terms and conditions ("T&Cs") that can be found on Speedpay's website. (*See* Mot. Comp. Arb. 2.) Among the T&Cs is an arbitration clause which states:

> Unless You opt out . . . , any dispute arising from or relating to [Speedpay's service] or your Payment(s) [to Carrington through Speedpay] shall be resolved by mandatory and binding arbitration. The arbitrator shall also decide what is subject to arbitration unless prohibited by law. The arbitration will be administered by American Arbitration Association ("AAA") under its Consumer Arbitration Rules . . . .

(*See* Decl. of Azita Guzzo ISO Mot. Comp. Arb. ("Guzzo Arb. Decl.") ¶ 11, ECF No. 75-2; Ex. B to Guzzo Arb. Decl. ("T&Cs"), ECF No. 75-4.) Thus, the first matter for the Court to consider is Carrington's Motion to Compel Arbitration.

### III. MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA") "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract.'" *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (emphasis omitted) (quoting 9 U.S.C. § 2). While it is usually the court's task to "determine whether the parties agreed to arbitrate th[e] dispute," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), the court "will be divested of that authority if the parties clearly and unmistakably provide that an arbitrator is to decide whether a dispute is subject to arbitration," *New England Mech., Inc. v. Laborers Loc. Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990) (internal quotation marks omitted).

Still, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter[, ]including arbitrability[,] courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

3

Relevantly, the Dodd-Frank Act Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") "prohibits the use of arbitration provisions or pre-dispute waivers of federal statutory causes of action in connection with residential mortgages." *Attix v. Carrington Mortg. Servs., LLC*, No. 1:20-cv-22183-UU, 2020 WL 5757624, at *6 (S.D. Fla. Sept. 16, 2020) (citing 15 U.S.C. § 1639c(e)), *appeal docketed*, No. 20-13575 (11th Cir. Sept. 23, 2020); *see also Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1077 (D. Colo. 2013) ("The Dodd-Frank Act imposes . . . the refinement and restriction of the FAA's policy favoring arbitration of claims." (internal quotation marks omitted)). The Dodd-Frank Act states in relevant part:

> (1) In general
>
> *No residential mortgage loan . . . may include terms which require arbitration* or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.
>
> [. . .]
>
> (3) No waiver of statutory cause of action
>
> *[N]o other agreement* between the consumer and the creditor *relating to the residential mortgage loan . . .* referred to in paragraph (1), *shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court* of the United States . . . for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or *any other Federal law*.

15 U.S.C. § 1639c(e) (emphases added).

Notably, the exact same arbitration clause language from the Speedpay T&Cs has already been analyzed by another district court in a case with nearly identical facts and the same defendant. In *Attix* (another lawsuit challenging Carrington's pay-to-pay fees), the court found the statutory language "clear and unambiguous," and it concluded that "[m]aking a payment on a residential mortgage loan certainly *relates to*

4

the residential mortgage loan." *Attix*, 2020 WL 5757624, at *9 (emphasis added) (internal quotation marks and alterations omitted). Thus, the *Attix* court determined that even though the arbitration clause in Speedpay's T&Cs would have applied to the *Attix* plaintiffs' claims against Carrington, the Dodd-Frank Act ultimately prohibited any purported agreement to arbitrate, and Carrington could not invoke the Speedpay T&Cs to force the *Attix* plaintiffs to arbitration. *Id.*

This Court agrees with the *Attix* court's reasoning and reaches the same conclusion here. Although it appears from the Speedpay arbitration clause that the question of arbitrability might otherwise be one for an arbitrator to decide, the Dodd-Frank Act renders the clause invalid. Plaintiffs' mortgage payment transactions constitute "agreement[s] between the consumer[s] and the creditor relating to the residential mortgage loan[s]." *See* 15 U.S.C. § 1639c(e)(3). The Speedpay T&Cs cannot bar Plaintiffs from bringing their claims in this Court. *See id.* Therefore, Carrington's Motion to Compel Arbitration is **DENIED**. The Court thus turns to Carrington's Motion to Dismiss, brought under Rule 12(b)(6).

### IV. MOTION TO DISMISS

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). But factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Testing the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited

to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Here, Plaintiffs assert seven causes of action against Carrington for (1) violation of the Federal Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, ("FDCPA"); (2) breach of contract; (3) violation of the Maryland Consumer Debt Collection Act, ("MCDCA"); (4) violation of the Maryland Consumer Protection Act ("MCPA"); (5) violation of Texas Finance Code section 392.001(2); (6) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); and (7) violation of the "unlawful" prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200 ("UCL"). (*See* Compl. ¶¶ 113–206.) Carrington moves to dismiss each claim, which the Court addresses below.

**A.    FDCPA (Claim One)**

Plaintiffs allege Carrington's pay-for-pay fees violate § 1692f(1) of the FDCPA, which prohibits a debt collector from "collect[ing] . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1592f(1), (*see* Compl. ¶¶ 113–22). Notably, this claim is brought by only Thomas-Lawson, Boley, and Green, on behalf of themselves and the putative nationwide class. (*Id.*) Now, Carrington moves to dismiss this claim on grounds that: (1) Plaintiffs fail to allege Carrington is a "debt collector"; (2) the alleged fees are not "incidental" to Plaintiffs' mortgage debts; and (3) the alleged fees are "permitted by law." (Mot. Dismiss 15–20.)

*1.    "Debt Collector"*

First, the Court finds that Plaintiffs sufficiently allege Carrington is a debt collector. The purpose of the FDCPA is "to eliminate abusive debt collection

practices by debt collectors." 15 U.S.C. § 1692(e). Thus, a plaintiff suing under the FDCPA must allege, among other things, "that the defendant is a 'debt collector' collecting a 'debt.'" *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008). The term "debt collector" encompasses "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term does not include a consumer's creditors, mortgage servicing companies, or assignees of the mortgage debt, *unless* the debt was in default at the time the debt was assigned. *See Kazovsky v. Metrocities Mortg., LLC*, No. 2:11-cv-06079-ODW (FMOx), 2012 WL 13012694, at *8 (C.D. Cal. Mar. 27, 2012) (collecting cases); *see also* 15 U.S.C. § 1692a(6)(F)(iii).

Here, Plaintiffs allege that Carrington is a mortgage servicing company. (Compl. ¶¶ 9–12.) Plaintiffs also allege that "Thomas-Lawson's loan had a past-due balance at the time Carrington acquired the servicing rights," (*id.* ¶ 48), "Green's loan was in default at the time Carrington acquired the servicing rights," (*id.* ¶ 63), and "[a]t the time Carrington acquired the servicing rights [to Boley's loan], Ms. Boley had a past-due balance," (*id.* ¶ 75). Plaintiffs then allege, a few times, that Carrington "acquired the loans of Plaintiffs and the [putative nationwide class] members *while those loans were in default*." (*Id.* ¶ 116 (emphasis added); *see also id.* ¶¶ 49, 64, 76.)

Carrington contends that allegations of a merely past-due balance are insufficient to establish that a loan was in default. (Mot. Dismiss 16.) That is correct. Although there are times when a past-due balance may result in a default, that is not always the case. Thus, "courts have repeatedly distinguished between a debt that is *in default* and a debt that is *merely outstanding*, emphasizing that only after some period of time does an outstanding debt go into default." *Manello v. Residential Credit Sols., Inc.*, No. 2:15-cv-07674-CAS-AJW, 2016 WL 94236, at *4 (C.D. Cal. Jan. 7, 2016) (emphasis in original) (quoting *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d

82, 86 (2d Cir. 2003)). In the Ninth Circuit, courts may "look to any underlying contracts" to determine whether a loan is "in default." *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011). Here, the deeds of trust for Thomas-Lawson's loan and Green's loan state that default occurs upon "fail[ure] to pay in full any monthly payment . . . prior to or on the due date of the *next* monthly payment." (Compl. Ex. A § 9(a)(i), Ex. B § 9(a)(i), ECF No. 1-1 (emphasis added).) Thus, Plaintiffs' allegations that their loans carried past-due balances do not establish that their loans were in default.

Nevertheless, Plaintiffs also allege outright that their loans were "in default" when Carrington obtained servicing rights. (*See* Compl. ¶ 49 ("Carrington acquired [Thomas-Lawson's] loan in default."), ¶ 63 ("Green's loan was in default at the time Carrington acquired the servicing rights."), ¶ 76 ("Since Carrington acquired [Boley's] loan in default . . . Carrington is a debt collector.").) Carrington denies these allegations exist,[2] but simply saying they do not exist does not make it so. Construing all inferences in favor of Plaintiffs and assuming the truth of their allegations, the Court finds that Plaintiffs adequately allege that Carrington acted as a "debt collector" for purposes of the FDCPA.[3]

### 2. "Incidental to the Principal Obligation"

Next, Carrington argues that even if it is a debt collector, its pay-to-pay fees do not violate the FDCPA because such fees are not "incidental to" the underlying mortgage obligations. (Mot. Dismiss 18–19.) Implicit in this argument is the idea

---

[2] *See* Mot. Dismiss 2 ("[E]ach Plaintiff fails to plead that he or she was 'in default' when Carrington obtained servicing rights.").

[3] Ironically, despite its arguments here, Carrington appears to be in the practice of telling its consumers that it *is* a debt collector. Carrington submitted a transcript of its phone call with Green, during which Green authorized a payment and the Carrington representative said: "I've just got to advise you [Mr. Green] anytime we do discuss the account with you, *it is an attempt to collect on the debt*. Any and all information obtained is used for that purpose, and that [sic] *Carrington Mortgage Services is a debt collector*." (*See* Decl. of Elizabeth Ostermann ISO Mot. Dismiss ("Ostermann Dismiss Decl.") ¶¶ 10–11, ECF No. 76-8; Ex. F to Ostermann Dismiss Decl., ECF No. 76-14 (emphases added).)

that a fee must be incidental to the principal obligation in order to violate § 1692f(1). And as to that issue, there appears to be a wide split among district court decisions.[4]

Some courts, including courts in the Central District, have held that where a consumer chooses to pay a convenience fee *while other fee-free methods of payment are available*, such convenience fees are not prohibited by § 1692f because they are not "incidental to" principal debts. *See, e.g.*, *Flores v. Collection Consultants of Cal.*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (dismissing FDCPA claim because convenience fees for optional payment methods are "not 'incidental' to the principal obligation"); *Est. of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1264–65 (S.D. Fla. 2020) (dismissing FDCPA claim because "convenience fees are a separate transaction neither part of, nor incidental to, the transferred debt"); *see also Lish v. Amerihome Mortg. Co., LLC*, No. 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597, at *3–4 (C.D. Cal. Nov. 10, 2020) (dismissing RFDCPA claim based on *Flores*).

But other courts, including courts in the Central District, have declined to follow *Flores* because § 1692f(1) prohibits the collection of any amount, whether incidental to the underlying debt or not. *See, e.g.*, *Simmet v. Collection Consultants of Cal.*, No. CV 16-02273-BRO (PLAx), 2016 WL 11002359, at *6 (C.D. Cal. July 7, 2016) (collecting cases and rejecting *Flores* because "it is unnecessary to determine whether the alleged . . . convenience fee is incidental to the underlying debt"); *Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-cv-04303-WHO, 2020 WL 1904596, at *2 (N.D. Cal. Apr. 17, 2020) ("[M]ost courts have rejected [*Flores*] and found that similar convenience fees violate the FDCPA, at least as a matter of pleading."); *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-CV-990-LJO-BAM, 2016 WL 2841495, at *6 (E.D. Cal. May 9, 2016) ("Whether a fee is 'incidental to the principal

---

[4] As far as the Court is aware, the Ninth Circuit has not addressed this question.

obligation' is not dispositive."); *Lembeck v. Arvest Cent. Mortg. Co.*, No. 20-cv-03277-VC, 2020 WL 6440502, at *2 (N.D. Cal. Nov. 3, 2020).

Faced with this apparent split in authority, the Court looks back to the statutory language. The FDCPA provision upon which Plaintiffs rely, § 1692f(1), prohibits "*[t]he collection of any amount* (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*." 15 U.S.C. § 1692f(1) (emphases added). It is clear from the statute's plain language that an "amount" collected does not need to be "incidental to the principal obligation" to violate § 1692f(1). *See Simmet*, 2016 WL 11002359, at *6 ("'Any amount' includes, but is not limited to, charges 'incidental' to the underlying debt."). Thus, despite *Flores* and the cases that have followed its reasoning, this Court concludes that a fee *can* violate § 1692f(1) even if it is not incidental to the principal obligation. Consequently, the Court need not conclude whether Carrington's pay-for-pay fees are incidental to Plaintiffs' mortgage debts, as such a determination would not dispose of Plaintiffs' claims in any event. To be clear, though, the Court does *not* conclude that all pay-to-pay fees violate § 1692f(1). (*See infra*, Part IV.A.3.)

### 3. "Permitted by Law"

Carrington's last argument regarding the FDCPA claim is that the pay-to-pay fees are otherwise "permitted by law" because they are the subject of valid, separate agreements into which Plaintiffs freely and lawfully entered. (Mot. Dismiss 19–20; Reply Dismiss 1–2.) Without going so far as to conclude that Plaintiffs entered into contracts not described in the Complaint, the Court finds this argument persuasive.

Plaintiffs contend that "the only logical reading of [§ 1692f(1)] is to prohibit such separate agreements." (Opp'n Dismiss 11.) To the contrary, the statute proscribes "[t]he collection of any amount . . . *unless such amount is* [1] expressly authorized by the agreement creating the debt or [2] *permitted by law*." 15 U.S.C. § 1692f(1) (emphases added). Indeed, "[n]othing in the FDCPA . . . prohibits

10

[Carrington] from offering to enter into a new contract with the debtor, *i.e.*, [for] the added convenience of paying by phone." *Lish*, 2020 WL 6688597, at *8 (internal quotation marks omitted) ("[C]onvenience fees are not 'interest or other loan charges.' Instead, they are an entirely separate charge incurred for providing an entirely separate service."). Furthermore, Plaintiffs cannot rely on § 1692f(1) to establish that the pay-to-pay fees are *prohibited* by law—such circular reasoning would be illogical, as the statute does not prohibit collection of fees that are *permitted* by law.

Ultimately, Plaintiffs do not set forth a cognizable legal theory that Carrington's pay-to-pay fees are unlawful. Plaintiffs rely on an incorrect legal theory that pay-to-pay fees *per se* violate § 1692f(1), but they do not. Disregarding Plaintiffs' conclusory and legally incorrect allegations that the fees violate the FDCPA and similar state statutes, Plaintiffs merely allege that the fees are not expressly authorized by the mortgage agreements. (*See* Compl. ¶¶ 2, 46.) Even accepting this as true, that does not establish that the fees are *not* permitted by law. Plaintiffs therefore fail to allege a cognizable legal theory that Carrington violated § 1692f(1) of the FDCPA, and Carrington's Motion to Dismiss is **GRANTED** with respect to this claim.

**B. Breach of Contract (Claim Two)**

Next, Plaintiffs allege that the pay-to-pay fees constitute a breach of their mortgage agreements. (Compl. ¶¶ 123–58.) Carrington moves to dismiss this claim because the fees are not prohibited by the mortgage agreements and are the subjects of separate agreements entered into at the time of payment. (Mot. Dismiss 5–8, 10–11.)

Essentially, Plaintiffs contend that the mortgage agreements prohibit the pay-to-pay fees *because* such fees violate the FDCPA, and the agreements prohibit Carrington from "charg[ing] fees that are expressly prohibited by . . . Applicable Law." (Opp'n Dismiss 28.)[5] However, this same argument has been rejected by other

---

[5] Plaintiffs assert that paragraph 13 of their mortgage agreements prohibit fees that are expressly prohibited by applicable law. (Opp'n Dismiss 28.) However, this provision only appears in Boley's agreement, in paragraph 14.

courts in this Circuit because "it is not entirely settled whether convenience fees are 'expressly prohibited' by [the FDCPA]." *Torliatt*, 2020 WL 1904596, at *5 (rejecting argument that a violation of any law could result in breach of a contract provision with similar language). Moreover, here, Plaintiffs fail to allege any cognizable legal theory showing that *these* pay-to-pay fees violate the FDCPA. (*See supra*, Part IV.A.3.) Thus, Plaintiffs also fail to allege a breach of the mortgage agreements, and Carrington's Motion to Dismiss is **GRANTED** with respect to this claim.

### C. State Law Claims (Claims Three through Seven)

Plaintiffs' remaining claims are asserted under various state law statutes and mimic or rely on the alleged FDCPA claim. (*See* Compl. ¶¶ 159–206.) Plaintiffs concede that "[b]ecause [the asserted state] statutes are identical to the FDCPA, the parties agree that . . . the analysis of whether Carrington violated [§] 1692f(1) of the FDCPA and its state analogues is the same." (Opp'n Dismiss 11.) As already explained in the context of the claims above, these remaining claims incorrectly presuppose that pay-to-pay fees are prohibited by the FDCPA, the RFDCPA, the TDCA, and the MCDCA, but they are not. (*See* Reply 2.) This includes Plaintiffs' UCL claim, which relies exclusively on the UCL's "unlawful" prong. (Compl. ¶ 204.) Accordingly, for the reasons already discussed above, Carrington's Motion to Dismiss is **GRANTED** as to Plaintiffs' state law claims as well.

### D. Leave to Amend

A court dismissing a complaint should provide leave to amend if the complaint could be saved by amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires."). Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, although Plaintiffs request leave to amend in the event the Court grants Carrington's Motion to Dismiss, they do not offer any insight as to how they might amend their claims. (*See* Opp'n Dismiss 29.) Carrington, on the other hand, has submitted ample evidence to show that the alleged pay-to-pay fees were likely the results of separate, valid contracts between Plaintiffs and Carrington. (*See, e.g.*, Ostermann Dismiss Decl. ¶¶ 10–11; Ex. F to Ostermann Dismiss Decl.; Decl. of Azita Guzzo ISO Mot. Dismiss ("Guzzo Dismiss Decl.") ¶¶ 7–12, ECF No. 76-2; Exs. A–E to Guzzo Dismiss Decl., ECF Nos. 76-3–76-7.) Plaintiffs "do not dispute that, each time they paid a fee to make monthly payments in a method not provided for by their loan agreements, they affirmatively agreed to do so pursuant to a valid contract, and they do not address how these separate contracts impact the application of the statutes." (*See* Reply 1.) Rather than disputing the existence or validity of those separate contracts, Plaintiffs merely argue that pay-to-pay fees are *per se* prohibited by the FDCPA and analogous statutes. That is incorrect as a matter of law, and no amendment could cure that deficiency. The Court thus finds that amendment would be futile, and leave to amend is **DENIED**.

## V.  CONCLUSION

In summary, Carrington's Motion to Compel Arbitration is **DENIED**. (ECF No. 75.) Carrington's Motion to Dismiss is **GRANTED** in its entirety, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. (ECF No. 76.) Plaintiffs' Motion to Appoint Interim Lead Counsel is therefore **DENIED** as moot. (ECF No. 71.) The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

April 5, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**